GARY M. RESTAINO
United States Attorney
District of Arizona
MONICA E. RYAN
NATHANIEL J. WALTERS
Assistant U.S. Attorneys
405 W. Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone: (520) 620-7300
Email: Monica.Ryan@usdoj.gov
        Nathaniel.Walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-0355-PHX-SPL |
| Plaintiff, | **GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF INTERVENING CAUSATION** |
| vs. | |
| Larry Edward Brown, Jr., | |
| Defendant. | |

The defendant, Larry Edward Brown, Jr., an Internal Revenue Service – Criminal Investigations Special Agent and Use of Force Instructor, recklessly shot and killed Special Agent Patrick Bauer on August 17, 2023, at the Federal Correctional Institution – Phoenix. The defendant now seeks to avoid responsibility for his actions by arguing that medical negligence and/or delay in the transport and treatment of Special Agent Bauer was an intervening cause that breaks the chain of causation between the defendant's grossly negligent actions and Special Agent Bauer's death. Based on the following Memorandum of Points and Authorities, the United States, by and through undersigned counsel, respectfully requests that this Court preclude the defense from presenting any evidence that medical negligence and/or delay in the transport and treatment of Special Agent Bauer was an intervening cause of his death.

///

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

As alleged in the Indictment, on August 17, 2023, IRS Criminal Investigation agents were at the firearms range at Federal Correctional Institution - Phoenix (FCI-Phoenix) for standard pistol qualifications and classroom training. FCI-Phoenix is located at 37900 N. 45th Avenue, in a semi-rural area of Northwest Phoenix. The entrance to the prison complex is approximately 1.8 miles from the Pioneer Road Exit off Interstate-17, and the firearms range is on the north side of the FCI-Phoenix property, a 0.3-mile drive from the entrance of the prison complex. After training had concluded for the day, Special Agents Patrick Bauer and Larry Edward Brown, Jr., both Use of Force Instructors, were alone in a small, one-room structure known as "The Tower." At 11:05 a.m., while inside the Tower, the defendant shot Special Agent Bauer.

The defendant then called 9-1-1 at 11:08 a.m. While emergency medical responders were on their way, agents at the scene, who are trained to provide first aid in the field, provided first aid to Special Agent Bauer, which included the placement of a chest seal. United States Immigration and Customs Enforcement Officers quickly grabbed their first-aid kit and cleared the back seat of their vehicle, a pick-up truck, in the event Special Agent Bauer needed to be quickly transported to a medical facility. One of the ICE Officers told IRS-CI agents that he had a vehicle that was able to transport Special Agent Bauer if necessary. According to the Officer, someone with IRS-CI declined and said an ambulance was already in route and close to the range.

Phoenix Fire arrived on scene at 11:22 a.m., a difference of 14 minutes from the 9-1-1 call to their arrival, and Phoenix Fire EMTs immediately started rendering aid to Special Agent Bauer. An ambulance from Daisy Mountain Fire Department arrived four minutes later. The ambulance departed the scene approximately four minutes after that, at 11:30 a.m. The closest Level 1 trauma center to FCI-Phoenix was HonorHealth Deer Valley Hospital, located at 19829 North 27th Avenue. Coordination between the Phoenix Police Department and Phoenix Fire Department closed the on- and off-ramps to Interstate

17 and provided a police escort for the ambulance to allow for the fastest possible transport of Special Agent Bauer from the scene to the hospital. The ambulance arrived at the hospital at 11:44 a.m., 14-minutes after it left the scene at the firearms range. Medical personnel were standing by at the hospital entrance to meet the ambulance. At approximately 12:06 p.m., Special Agent Bauer was rushed to the Operating Room. Surgeons encountered Grade 5 injuries to the victim's inferior vena cava, pancreas, and stomach from the gunshot, and noted that he was in hemorrhagic shock. Despite the medical team's quick response to repair the wounds and to stop the bleeding (including the initiation of massive transfusion protocol), Special Agent Bauer succumbed to his injury, a single, penetrating gunshot wound to his torso, and was pronounced dead at 12:57 p.m.

The report from the victim's autopsy by Dr. Kevin Horn, Medical Examiner, noted findings of perforation of the victim's abdominal cavity, with perforating injuries of the stomach, pancreas, liver, superior pole of the right kidney, and the right hemidiaphragm, as well as a perforating injury of the inferior vena cava. Dr. Horn concluded that the victim died as a result of a gunshot wound to the torso.

On December 16, 2024, the defendant, through his attorneys, provided a report authored by Dr. Kenji Inaba, MD. *See* Attachment A. Dr. Inaba concludes that the absence of an emergency action plan at FCI-Phoenix "caused confusion, uncertainty, and a delay in the evacuation and administration of emergency medical care, to include surgical intervention, to Special Agent Bauer." Attachment A at Page 8. Dr. Inaba goes on to conclude that the absence of a plan combined "with the resulting delay in transporting Special Agent Bauer to a hospital for emergency care represented an independent and superseding cause of the death of Special Agent Bauer." *Id*. Finally, Dr. Inaba stated, "Specifically, and to a reasonable degree of medical certainty, it is more likely than not that Special Agent Bauer would have survived his injuries but for the delay in being transported to a hospital, and the resulting delay in surgical intervention and other efforts to save his life." *Id*.

///

- 3 -

## II.    LAW & ARGUMENT

An accused "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. Irrelevant evidence is not admissible. Fed.R.Evid. 402.

### a.  Controlling Ninth Circuit Law

The Ninth Circuit Court of Appeals has held that "[a] basic tenet of criminal law is that, when a criminal statute requires that the defendant's conduct has resulted in an injury, the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury…." *United States v. Rodriguez*, 766 F.3d 970, 980 (9th Cir. 2014) (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1026 (9th Cir. 2010)). Proof of proximate cause requires a showing by the government that the harm suffered by the victim was a foreseeable outcome of the defendant's conduct. *Id*. (quoting *Pineda-Doval*, 614 F.3d at 1028). "The proximate cause showing is more easily met when the intervening event is not a coincidence or unrelated to the defendant's prior conduct, but rather was a response to that conduct." *Id*. (internal quotations omitted). *Pineda-Doval* held that when an intervening event is a response to the defendant's conduct, "the question is whether the intervening act was abnormal – that is, whether, looking at the matter with hindsight, it seems extraordinary…." *Pineda-Doval*, 614 F.3d at 1028.

#### i.    United States v. Pineda-Doval.

In *Pineda-Doval*, the defendant challenged his convictions for ten counts of transportation of illegal aliens resulting in death. *Pineda-Doval*, 614 F.3d at 1022. There, the defendant argued the "jury should have been instructed that it could find the defendant guilty only if his conduct was the proximate cause of the ten charged deaths…." *Id*. The defendant also argued that the proximate cause of the victims' deaths was the negligent deployment by the United States Border Patrol agents of a spike strip that caused the

defendant's vehicle to flip over. *Id*. at 1024. The Ninth Circuit held that the defendant's "failed attempt to swerve around the spike strip was the proximate cause of the deaths of ten individuals. It was entirely foreseeable that the Border Patrol would deploy a [spike strip] against the defendant's Suburban and that [the defendant's] dangerous driving would end in an accident … No reasonable jury could have found that a car accident was an extraordinary result." *Id*. at 1029. Notably, the Ninth Circuit rejected the defendant's argument that the Border Patrol agents' negligence "constituted a superseding cause of the accident." *Id*. at 1029. The Ninth Circuit stated:

> "If we assume that [the Border Patrol agent] made a mistake by pulling the [spike strip] across the road several seconds too early, this mistake was not so extraordinary as to break the chain of causation. [The defendant] created the dangerous conditions … and, because he refused to pull over in response to [the Border Patrol agent's] lights and sirens, forced the Border Patrol to use drastic measures to stop him. The resulting deaths of his ten passengers were tragic, but not unexpected…."

*Id*. at 1029-30. In addition, the Court stated, "To show that the actions of [the Border Patrol agent] constituted a superseding cause that broke the chain of causation between [the defendant's] dangerous driving, that negligence would have had to be so extraordinary that it would be unfair to hold the defendant responsible for the resulting accident and deaths." *Id*. at 1034 (citation and internal quotation marks omitted). Finally, in holding that the failure to instruct the jury correctly was harmless, the Court stated, "Even assuming that the defendant persuaded the jury that timing was essential to the correct and safe deployment of [the spike strip] and that [the Border Patrol agent] made the mistake of pulling the spike strip across the road several seconds too early, no reasonable jury could have found that [the Border Patrol agent's] actions were extraordinary and could not have been foreseen by [the defendant]." *Id.* (citations and footnote reference omitted).

///

1
                        ii.        *United States v. Rodriguez.*

2
       In *United States v. Rodriguez*, the defendants were charged with murdering the

3
victim in his cell with knives, or shanks. *Rodriguez*, 766 F.3d at 975. Before trial, the

4
government filed a motion *in limine* to exclude evidence that medical negligence may have

5
contributed to the victim's death. *Id*. Among other things, the government "asserted that

6
such evidence was irrelevant because [the defendants] were liable for murder irrespective

7
of any medical negligence and that the evidence might lead to juror confusion." *Id*.[1]

8
       The District Court held that medical negligence was not a defense to murder

9
charges. *Id*. at 975. The Court noted that the defense expert's testimony failed "to proffer

10
expert testimony that [the victim's] death was caused *solely* by the independent intervening

11
acts of the medical staff's treatment …." *Id*. The Court also concluded that the expert was

12
precluded from testifying "about medical negligence in this case as the probative value of

13
such evidence [does not outweigh] the danger of confusing the jury." *Id*.[2]

14
       On appeal, the defendants argued that the District Court denied them a complete

15
defense by improperly excluding evidence of medical negligence. *Id*. at 980. Specifically,

16
the defendants claimed the removal of the victim's breathing tube contributed to his death

17
and was, therefore, an intervening cause. *Id*. The Ninth Circuit, relying on *Pineda-Doval*,

18
held that because medical treatment was a foreseeable response to the defendants' conduct

19
of stabbing the victim, the government established the defendant's actions were the

20
proximate cause of the victim's death. *Id*. at 981. The Ninth Circuit also stated that for the

---

[1] In *Rodriguez*, the government also filed a related motion *in limine* to preclude or limit the testimony of the defense's medical expert concerning medical negligence. There, the government also asserted that the defense's expert would not "state that [the victim's] death was caused solely by the independent intervening acts of the medical staff's treatment. That [the victim's] life may have been saved by more skillful medical treatment, even if true, is legally irrelevant … because even if this were true it would not relieve defendants of responsibility for [the victim's] murder …." *Id*. at 974.

[2] In the opinion, the Court in *Rodriguez* cited the District Court's statement verbatim, which reads, "However, Dr. Morgan was precluded from testifying "about medical negligence in this case as the probative value of such evidence outweighs the danger of confusing the jury." *Rodriguez*, 766 F.3d at 975. In a footnote, the Ninth Circuit stated, "The judge apparently meant to say that the probative value of the evidence was outweighed by the danger of confusing the jury." *Id*. at n.2.

defendants to make the required showing that medical negligence was an intervening cause, they would have needed to show that the medical negligence was "so extraordinary that it would be unfair to hold [the defendants] responsible for the resulting … death [ ]." *Id*. at 981 (citing *Pineda-Doval*, 614 F.3d at 1034) (citation and internal quotation marks omitted). The Court also stated:

> "As it was foreseeable in *Pineda-Doval* that Border Patrol agents would deploy a spike strip to stop a fleeing suspect, it was similarly foreseeable in this case that a victim of multiple deep stab wounds would receive medical care … And, as we held in *Pineda-Doval*, any negligence in the foreseeable response to the stab wounds **does not break the causation chain** … the same is true regarding [the victim's] removal of his breathing tube."

*Id*. at 981-82 (internal citations omitted) (emphasis added). The Ninth Circuit also agreed with the Seventh Circuit's similar holding in *Brackett v. Peters*, 11 F.3d 78 (7th Cir. 1993). The Seventh Circuit held that "an act is a cause of an event if two conditions are satisfied: the event would not have occurred without the act; the act made the event more likely." *Rodriguez*, 766 F.3d at 982 (citing *Brackett*, 11 F.3d at 79). After an elderly victim was brutally assaulted, she died several days later in the hospital after multiple medical issues arose. *Id*. (citing *Brackett*, 11 F.3d at 80). The Seventh Circuit went on to say, "Death was the last link in a continuous series of events that began with the assault." *Id*. at 983 (citing *Brackett*, 11 F.3d at 80).

The Ninth Circuit also agreed with other circuits that have held that "defendants are liable for murder notwithstanding additional occurrences." *Rodriguez*, 766 F.3d at 983; *see United States v. Swallow*, 109 F.3d 656 (10th Cir. 1997) (affirming the defendant's murder convictions and rejecting the defendant's argument that negligence on the part of first responders contributed to the victims' deaths); *United States v. Guillette*, 547 F.2d 743 (2d Cir. 1976) (holding that where intervening acts such as negligent acts of a third party are foreseeable and naturally result from a defendant's criminal conduct, the law considers the chain of legal causation unbroken); *United States v. Rodriguez*, 279 F.3d 947, 950-51 (11th

Cir. 2002) (holding in the sentencing enhancement context that one may be held criminally liable for a victim's death even where medical negligence or mistreatment also contributed to the victim's death"). *Rodriguez* also followed several state courts that similarly held that the defendant must demonstrate extraordinary medical negligence as the sole cause of death to break the causation chain. *Rodriguez*, 766 F.3d at 984; *See, e.g., People v. Mars*, 985 N.E.2d 570, 575 (Ill.App.Ct. 2012); *State v. Shabazz*, 719 A.2d 440, 445 (1998); *State v. Kirby*, 39 P.3d 1, 12 (2002); *People v. Roberts*, 826 P.2d 274, 295 (1992).

The Ninth Circuit ultimately held:

> "Given the weight of such consistent federal and state precedent, we conclude that [the defendants] failed to proffer any probative evidence that extraordinary medical negligence or [the victim's] removal of his breathing tube was the *sole* cause of [the victim's] death. Indeed, [the victim] would not have needed medical care or a breathing tube absent [the defendants'] infliction of five stab wounds … The alleged medical negligence or removal of [the victim's] breathing tube may have been another cause of [the victim's] death, but neither was a supervening event exonerating [the defendants] from the death resulting from their assault."

*Rodriguez*, 766 F.3d at 984 (internal quotations omitted; emphasis added).

### b. Defendant's Actions Were the Proximate and Foreseeable Cause of Victim's Death.

#### i. *Medical Treatment for a Gunshot Wound is Foreseeable.*

In this case, Special Agent Bauer's need for medical treatment after the defendant shot him was utterly foreseeable. Indeed, after the defendant recklessly shot Special Agent Bauer, the defendant called 9-1-1 and placed a chest seal on Special Agent Bauer. In addition, the defendant is a federal law enforcement officer and a use of force instructor for IRS-CI. As such, the defendant was undoubtedly aware that a gunshot wound would require medical treatment. Delays, confusion, and uncertainty are also foreseeable responses to a traumatic event where one federal agent and use of force instructor shoots another federal agent at a training range.

1

2               ii.      *Any Alleged Medical Negligence or Delay Was Not the Sole*

3                         *Cause of Special Agent Bauer's Death.*

4          Here, any alleged medical negligence or delay was not the sole cause of Special

5    Agent Bauer's death. The defendant does not claim that any specific treatment caused

6    Special Agent Bauer's death. Instead, the defendant asserts that a *delay* in medical

7    treatment is an intervening act that breaks the causation chain. According to Dr. Inaba, the

8    defendant's expert witness, prompt medical attention *may* have saved Special Agent

9    Bauer's life. In other words, the defendant's expert witness admits that had no alleged delay

10   occurred, Special Agent Bauer may still have succumbed to his injuries. Notably, the

11   Medical Examiner did not note anything in his report about a delay of medical attention

12   contributing to Special Agent Bauer's death. In fact, there is no evidence that anything

13   other than the gunshot wound inflicted by the defendant caused Special Agent Bauer's

14   death. Moreover, as in *Rodriguez*, Special Agent Bauer would not have needed medical

15   care had it not been for the defendant's grossly negligent act of handling his firearm without

16   due caution and reckless disregard for human life and shooting Special Agent Bauer.

17   Because any alleged medical negligence or delay was not the sole cause of Special Agent

18   Bauer's death, the Court should preclude the defendant from presenting this defense to the

19   jury.

20

21              iii.     *Any Alleged Medical Negligence or Delay Was Not So*

22                        *Extraordinary That Holding Defendant Responsible Would Be*

23                        *Unfair.*

24         In this case, any alleged medical negligence or delay was not so extraordinary that

25   holding the defendant responsible for his actions would be unfair. Here, the shooting

26   occurred at FCI-Phoenix, which is in a remote area of Northwest Phoenix. From the time

27   the defendant shot Special Agent Bauer to Phoenix Fire's arrival was 14 minutes. Four

28   minutes later, Daisy Mountain Fire arrived and loaded Special Agent Bauer for transport

and left for the hospital approximately four minutes after their arrival. Even with a police escort to HonorHealth Deer Valley, it took 14 minutes for Daisy Mountain Fire to get to the hospital due to the distance from the scene to the closest Level 1 Trauma Center. At approximately 12:06 p.m., Special Agent Bauer was rushed to the Operating Room. Special Agent Bauer succumbed to his injuries and was pronounced dead at 12:57 p.m.

The defendant's expert concludes, "The absence of an emergency action plan at the FCI range on August 17, 2023 represented a gross deviation from the accepted standard of care and norms in law enforcement." Attachment A at Page 8. According to Dr. Inaba, the absence of an emergency action plan, along with "the delay in being transported to a hospital, and the resulting delay in surgical intervention and other efforts to save his life," represents "an independent and superseding cause of the death of Special Agent Bauer." *Id*.

Here, medical personnel arrived as quickly as possible at the firearms range FCI-Phoenix but were delayed mainly due to the scene's remote location. There is nothing extraordinary about the response times of the Phoenix Fire Department or the Daisy Mountain Fire Department. The amount of time it took to transport Special Agent Bauer from the scene to the hospital was also unavoidable based on FCI-Phoenix's remote location relative to the nearest Level 1 trauma center. In addition, the decision of other law enforcement officers not to transport Special Agent Bauer themselves and to wait for an ambulance that was on its way is not an extraordinary event that breaks the causation chain. Conversely, relying on other law enforcement officers, who are not medical professionals, to assess *internal* bleeding would be extraordinary. The defendant's grossly negligent and reckless handling of his firearm created the chain of events, and just like *Rodriguez*, there is no evidence that extraordinary medical negligence or delay was the *sole* cause of Special Agent Bauer's death that breaks the chain of causation started by the defendant. *See Rodriguez*, 766 F.3d at 984; *see also United States v. Thompson*, 119 F.4th 445, 452 (6th Cir. 2024) ("Because [the defendant's] experts suggested that [the victim's] stab wounds were themselves the primary cause of [the victim's] death, the allegedly improper medical

care did not break the causal chain."). In addition, Dr. Inaba does not note any medical negligence, but even if any medical negligence or delay *had* been a contributing cause of Special Agent Bauer's death, it still would not be a supervening event exonerating the defendant from the death resulting from his reckless actions. Thus, any alleged medical negligence or delay was not an intervening cause of Special Agent Bauer's death as claimed by the defendant.

## III.    CONCLUSION

Here, the defendant's grossly negligent act was the proximate cause of Special Agent Bauer's death. Not only was the need for medical attention foreseeable, but so was the risk of confusion, delay, and uncertainty. In addition, there was nothing extraordinary about Special Agent Bauer's treatment or transport to the hospital that would render holding the defendant responsible for his actions unfair. Under the law, even assuming medical negligence and/or delay existed in this case, the causal chain from the defendant shooting the victim to the victim's death at the hospital is not broken. Therefore, any evidence of medical negligence and/or delay in the treatment and/or transport of Special Agent Bauer that serves to support an intervening cause defense is irrelevant. As such, the defendant should be precluded from presenting an intervening causation theory to the jury.

///

1

## IV.    PROPOSED LANGUAGE

2

Should the Court grant this motion *in limine*, the government respectfully requests

3

that the Court include the following language in its Order:

4

The Defendant, Larry Edward Brown, Jr., is precluded from presenting evidence,

5

either through exhibits or testimony, that medical negligence and/or delays in the treatment

6

and/or transport of Special Agent Patrick Bauer was an intervening or superseding cause

7

of Special Agent Patrick Bauer's death.

8

Respectfully submitted this 14th day of January 2025.

9

10

GARY M. RESTAINO
United States Attorney
District of Arizona

11

12

*s/Monica E. Ryan*
*s/Nathaniel J. Walters*

13

MONICA E. RYAN
NATHANIEL J. WALTERS
Assistant United States Attorneys

14

15

16

Copy of the foregoing served electronically or by
other means this 14th day of January 2025, to:

17

All ECF Participants

18

19

20

21

22

23

24

25

26

27

28