JASON D. LAMM # 018454
Law Office of Jason Lamm
2501 North Seventh Street
Phoenix, AZ  85006-1047
Telephone: (602) 222-9237
Facsimile: (602) 222-2299
Email:  jlamm@cyberlawaz.com

JEFFREY H. JACOBSON # 019502
Jacobson Law Firm
570 N. Columbus Blvd., Ste. B
Tucson, AZ  85711-2972
Telephone: (520) 834-8034
Facsimile: (520) 844-1011
Email:  jeff@jacobsonlawfirm.net
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America**, | Case No.: 2:24:cr-00355-SPL |
| Plaintiff, | DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF INTERVENING CAUSATION (DOC. 124) |
| vs. | |
| **Larry Edward Brown, Jr.**, | |
| Defendant | |

Defendant, through counsel, responds in opposition to the Government's Motion *In Limine* to preclude Defendant from presenting evidence of intervening causation to the jury. The Government's motion misapplies the law and misinterprets the facts in this case. In short, the Government seeks to deprive Defendant of an opportunity to present his case to the jury and, generally,

hamstring his ability to present a meaningful defense, all in violation of his Sixth and Fourteenth Amendment rights.

## I. Introduction

Criminal defendants are entitled to jury instructions on their theory of the case as long as the instruction is a correct statement of the law and the theory is supported by sufficient evidence for the jury to find in his favor. *United States v. Grissom,* 44 F.3d 1507, 1512 (10th Cir. 1995), *cert. denied* 115 S. Ct. 1270 (1995). For the reasons discussed below, Defendant has more than satisfied these requirements. The Government ignores this fundamental tenet of criminal law and, instead, relies primarily on two cases, *United States v. Rodriguez*, 766 F.3d 970 (9th Cir. 2014) and *United States v. Pineda-Doval*, 614 F.3d 109 (9th Cir. 2010). Neither case, however, applies. And, like its other *in limine* motions, the Government asserts conclusions about its evidence which have yet to be determined by the jury.

## II. Argument

### A. Applicable Case Law Supports Defendant's Causation Defense

The Government's reliance on *Rodriguez* and *Pineda-Doval* is perplexing because both cases support Defendant's position. While each discusses the appropriateness of an intervening causation defense premised entirely on the foreseeability, abnormality, and the extraordinary nature of intervening events, those questions are factual determinations that are squarely and solely within the jury's purview.

In *Rodriguez*, the Government filed a motion *in limine* to exclude evidence that medical negligence may have caused the victim's death. The Government's motion was premised on the fact that Defendant "proffered no

witness, expert or otherwise, nor any other evidence to the government that would indicate that [Scopazzi's] treatment by medical staff was somehow negligent. . . ." *Rodriguez*, 766 F.3d at 974. The Court agreed and excluded the testimony because Defendant failed "to proffer expert testimony that [Scopazzi's] death was caused solely by the independent intervening acts of the medical staff's treatment. . . ." *Id.* On review, the Ninth Circuit held that proximate cause is not met when an intervening event is "unrelated to the defendant's predicate conduct". *Id.* at 980. In the case at bar, contrary to the *Rodriguez* matter, Defendant **will** present expert testimony from Kenji Inaba, M.D., that satisfies these tests. *See* Doc. 126-1.

The *Rodriguez* court also relied on its prior decision in *Pineda-Doval* where Defendant argued that the proximate cause of the death of the aliens he was smuggling into the United States was the negligent deployment by Border Patrol agents of a spike strip that caused the defendant's vehicle to flip over. *Id.* at 1022. The Ninth Circuit held that proof of proximate cause requires a showing by the government that the harm suffered by the victim was a foreseeable outcome of the defendant's conduct. *Id*. at 1028.

On appeal, the Ninth Circuit held that "occasional negligence that should have been anticipated by the defendant does not defeat proximate cause. . . ." *Id*. at 1029 (citation and internal quotation marks omitted). "To show that the actions of [the Border Patrol agent] constituted a superseding cause that broke the chain of causation between Pineda-Doval's dangerous driving, that negligence would have had to be so extraordinary that it would be unfair to hold the defendant responsible for the resulting accident and deaths." *Id*. at 1034 (citation and internal quotation marks omitted).

Both *Rodriguez* and *Pineda-Doval* stand on the shoulders of the same principle. When a criminal statute requires that the defendant's conduct has resulted in an injury, "the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury." *United States v. Spinney*, 795 F.2d 1410, 1415 (9th Cir. 1986). Given that the initial burden of proof on causation falls to the Government, the Defendant should be allowed to present his defense as to that essential element. Defendant will present evidence that a cascade of failures – none of which were foreseeable, all of which feel far below the standard of care owed to the victim in this case – are so extraordinary and clearly demonstrate that it would be unfair to hold Defendant responsible for the victim's death.

Here, within seconds of the shooting, several law enforcement personnel at the range, including Defendant, attempted to immediately transport the victim to the hospital. Inexplicably, however, they were prevented from doing so. From there, as articulated in the reports attached to the Government's motions *in limine*, a significant delay prior to the arrival of EMS, evaluation and departure of the victim unfortunately prolonged the time period before the surgeon could access what he really needed - surgical control of the inferior vena cava injury. Simply put, by the time the victim arrived at the Trauma Center, it was too late. Doc. 126-1 at 7-8. These are just some of the facts Defendant will present in this case relative to superseding causation that a jury may well find were extraordinary and not foreseeable to Defendant. Therefore, Defendant has satisfied the standard articulated in *Rodriguez* and *Pineda-Doval.*

### B.    The Government's Reliance on *Swallow* is also Misplaced

*United States v. Swallow,* 109 F.3d 656 (10th Cir. 1997), also cited by the Government, speaks precisely to the burden of production necessary to

introduce evidence and generate a legal basis for an intervening cause jury instruction. As a result of a domestic altercation, Swallow committed four homicides. Two of his victims died immediately; two died later. After he called 911, Swallow asked for medical personnel to render assistance to the two victims who were still alive. However, he refused to surrender to authorities and threatened to kill any law enforcement personnel who entered the house. The flat topography of the area surrounding the crime scene, combined with knowledge that Swallow was an excellent marksman, required emergency personnel to take a circuitous route in their efforts to render aid, thereby causing a delay in rendering medical treatment. It does not appear that Swallow's defense proffered any expert testimony that the delayed response represented an intervening or superseding cause of death. The District Court did, however, rule that Swallow could lay the foundation for a defense based on the acts and omissions of third parties and, specifically, allowed cross-examination in a manner that would allow him to assert that there was a legitimate basis for the defense.

The jury instruction proposed by Swallow characterized an independent intervening cause "as the unforeseeable gross negligence of a third party that relieves the defendant of responsibility for the death of the victim". *Id.* at 659 (citations omitted). The Tenth Circuit affirmed the District Court's denial of Swallow's requested instruction for two reasons. First, "there was no evidence presented by the defense that the conduct of the officers was so deficient as to raise their conduct to a level of gross negligence." *Id.* (internal citations omitted). Second, because the record established that Swallow participated in the intervening cause by refusing to surrender to authorities, he caused the delay in first responders reaching the victim to render aid.

Notably, the Tenth Circuit also referenced a state court matter for the principle that, "if some evidence is offered, . . . which is reasonably calculated to provide a reasonable doubt on the issue of causation, it must be admitted and the element of causation, with the supported defense, must be submitted to the jury". *Id.* at 660 (citation omitted).

*Rodriguez, Pineda-Doval*, and *Swallow* all stand for the principle that if Defendant lays the foundation for a defense based on the acts and omissions of third parties, which includes expert testimony, the jury should be allowed to hear that testimony and receive an intervening cause jury instruction.

### C. Defendant Has Met His Burden of Production

In addition to the facts referenced above, Defendant incorporates the reports and opinions of his experts, Kenji Inaba, M.D., and Anthony Cole here, already submitted into the record by the Government. Docs. 126-1 and 126-2. In part, Mr. Cole opines that "this incident was a clear departure from Phoenix Fire Department's Standard Operating Procedures. . . .Divergence from these procedures added to the increasing time for units to get to the incident scene to provide care." Doc. 126-2 at 3. Additionally, Dr. Inaba opines that:

> the absence of an emergency action plan caused . . . a delay in the evacuation and administration of emergency medical care, to include surgical intervention, to Special Agent Bauer . . . and [that] to a reasonable degree of medical certainty, it is more likely than not that Special Agent Bauer would have survived his injuries but for the delay in being transported to a hospital, and the resulting delay in surgical intervention and other efforts to save his life.

Doc 126-1 at 8. To date, the Government has not offered any expert opinions to the contrary. The totality of the evidence offered by Defendant to date alone satisfies his burden of production as required by *Grisson.*

### D. Foreseeability and Extraordinary Circumstances are Factual Questions for the Jury to Determine

The final section of the Government's Motion *in Limine* is basically a closing argument as to why "Defendant's actions" were the proximate and foreseeable cause of the victim's death, rife with excuses such as "medical personnel arrived quickly as possible" without any support or record citation. Doc. 124 at 10:13-14. Notably, the Government's argument does not reference or rely upon any expert testimony. Regardless, the evidence in this case clearly establishes that reasonable minds could certainly view causation differently.

To that end, the Government's motion omits numerous critical facts in this case. Defendant immediately called 911. Within minutes of the shooting, Defendant solicited and obtained the assistance of Immigration and Customs Enforcement Deportation Officers who were training on an adjacent range less than 200 yards away. The Deportation Officers immediately drove from the range to the Tower, where they made contact with the victim. At that point, consistent with their training and emergency medical plan, the Deportation Officers wanted to immediately transport the victim to the hospital in their vehicle. Doing so would be far faster than waiting for an ambulance, which would allow the victim to get immediate medical attention. IRS CI had no such emergency medical plan in place at the time of the shooting. For reasons that the Government can try to explain away at trial, at least one of the IRS CI agents on scene refused to transport the victim and, instead, insisted that they wait for the ambulance.

That ambulance, however, did not arrive for an additional 11 minutes, for a total of 18 minutes after Defendant called 911. The ambulance did not depart the FCI range until 15 minutes after the IRS CI agents rebuffed the Deportation

7

Officers' offer to transport the victim.[1] It is undisputed that Defendant played no role in refusing to allow the victim to be immediately transported to the hospital, had no role in deciding to wait for an ambulance, and had nothing do with the ambulance's delayed response time.

Moreover, multiple first responders support the notion that the intervening delay in transport, and the refusal of IRS CI agents to allow the victim to be transported sooner, was both extraordinary and unforeseeable. In a recorded statement, one police officer said, "[the victim's] gonna live, 100%." In another recorded statement, a different officer said that everything went very smoothly and that he was surprised to hear that the victim did not survive.

Simply put, foreseeability and the extraordinary nature of the intervening nonfeasance and malfeasance in this case are for the jury's consideration. The Government's argument unduly invades the province of the jury and attempts to summarily strip away the fact-finding function. The Government should not be permitted to usurp the judgment of subject matter experts who are undoubtedly in a far superior position to assist jurors with complex technical issues. In turn, doing so would deprive Defendant of the fundamental opportunity to present a meaningful defense that is well supported by facts – regardless of whether the Government disputes them or not.

---

[1] As Mr. Cole notes in his report, "NFPA 1710 (2020 Ed.) | 4.1.2.1 (8) stipulates the travel time for fire department units to a medical call involving ALS (Advanced Life Support) must be less than 480 seconds (8 minutes). Both Engine 56 and Rescue 146, as the primary care units, did not respond within the time mandated by industry standards. The considerable extra time for R146 to arrive on scene delayed in transporting the patient to a higher level of care." (Doc. 126-2 at p.4) (footnote omitted).

### III. Conclusion

Defendant has met his burden of production to establish intervening causation by proffering the testimony of two subject matter experts, both of whose opinions are unrefuted by the Government. It is for the jury - not the Government - to determine issues of fact and credibility, and to determine whether the intervening circumstances discussed by Defendant's experts (unrebutted) constitute foreseeable conduct or whether they are so extraordinary that it would be unfair or unjust to convict him. Accordingly, Defendant asks this Court to deny the Government's Motion *in Limine* to Preclude Evidence of Intervening Causation.

Respectfully submitted this 16th day of January 2025.

/s/ Jason D. Lamm
Jason D. Lamm

/s/ Jeffrey H. Jacobson
Jeffrey H. Jacobson
Attorneys for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, I electronically submitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and notice will be sent to all parties by operation of the Court's electronic filing system.

/s/ Danielle Oesterle