JASON D. LAMM # 018454
Law Office of Jason Lamm
2501 North Seventh Street
Phoenix, AZ  85006-1047
Telephone: (602) 222-9237
Facsimile: (602) 222-2299
Email:  jlamm@cyberlawaz.com

JEFFREY H. JACOBSON # 019502
Jacobson Law Firm
570 N. Columbus Blvd., Ste. B
Tucson, AZ  85711-2972
Telephone: (520) 834-8034
Facsimile: (520) 844-1011
Email:  jeff@jacobsonlawfirm.net
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America**, | ) Case No.: 2:24:cr-00355-SPL |
| Plaintiff, | ) |
| vs. | ) **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DR. KENJI INABA M.D. AND ANTHONY COLE (DOC. 126)** |
| **Larry Edward Brown, Jr.**, | ) |
| Defendant | ) |

Defendant, through counsel, opposes the Government's Motion *In Limine* to preclude experts Dr. Kenji Inaba and Anthony Cole. Doc. 126. For the reasons described below, the Government's motion should be denied.

**I.     Defendant's Disclosure was Timely**

The Government's request to preclude Dr. Inaba and Mr. Cole is the same as its motion seeking to preclude Lucien Haag. Doc. 127. The Government's crying foul is, again, much ado about nothing.

Defendant's response to the Government's motion to preclude Mr. Haag discusses, in detail, the timeline and sequence of events of where Defendant disclosed the identity of its experts and apprised it of their opinions (December 6 and 16, 2024, respectively). In the interest of brevity, Defendant incorporates by reference and re-urges the arguments in his response. Doc. 133.

With respect to Dr. Inaba, Defendant's December 6, 2024 disclosure to the Government states:

> Dr. Inaba is a Los Angeles based trauma surgeon and a Professor of Surgery, Anesthesia and Emergency Medicine at the University of Southern California Keck School of Medicine. He is also a reserve LAPD swat officer who serves as an on-scene medic and physician for various training exercises involving firearms. He will testify as to the propriety of the safety measures that were in existence at the FCI range on 17 August 2023, as well as the fact that but for the errors of personnel at the range, to include emergency medical personnel, Special Agent Bauer would more probably than not be alive today. Specifically, he will testify that the errors of these third parties constituted an independent and superseding cause of Special Agent Bauer's tragic death. Dr. Inaba's curriculum vitae is also attached.

Remarkably absent from the Government's motion is any reference to prejudice or harm it has supposedly suffered due to the timing of Defendant's disclosure. And appropriately so, because there can be no straight-faced claim of prejudice because of Defendant's specific and particular disclosure concerning Dr. Inaba.

Moreover, in its Notice of Intent to Use Expert Testimony, the Government advised that it may call "Trauma Surgeons Hoang Lim, D.O., and Joseph F. Sucher, M.D., and other personnel at Deer Valley Medical Center."

Doc. 111 at 2:21-22. Further, the Government never sought an extension of time (which Defendant would not have opposed) to secure an additional expert. Thus, the Government's argument is largely one of form over substance and one for which it cannot show any prejudice.

As to Mr. Cole, the Government half-heartedly argues that "the United States was then forced to navigate the holiday season to procure a rebuttal expert and was unsuccessful." Doc. 126 at 5:27-28. That claim, however, borders on disingenuous. Prior to formally disclosing its experts, on Friday, January 10, 2025, at 4:54 p.m., less than three days before its expert disclosure was due, the Government informed undersigned, in relevant part:

> **Emergency Response Expert . . .** The witness we previously contacted notified us *today* that he is not available to testify at trial, so we intend to seek an extension of time from the Court to file the notice *with respect to this witness only.*

Exhibit 1 (emphasis added).

The Government's own written assertion indicates that they had engaged with an expert witness, and that *after* the holiday season, they learned the expert they engaged was not available. Accordingly, the Government's excuse should be given no weight whatsoever. Simply put, the veneer of the Government's request to preclude Dr. Inaba and Mr. Cole is paper thin.

## II. Whether Intervening Causation is Foreseeable or Extraordinary is Factual Question for the Jury

Defendant has met his burden of production to make a *prima facie* showing from which a reasonable juror could find the facts and circumstances that occurred in the delayed transport of the Victim to a hospital were both extraordinary in nature and not foreseeable. To that end, Defendant incorporates and re-urges its argument in his response to the Government's Motion *in Limine* re: Intervening Causation. *See* Doc. 131. Whether the

Government agrees with the facts and evidence is of no moment. The Government's motion is nothing more than a dressed-up Rule 56 motion which is, of course, improper in a criminal matter.

**III.    The Expert's Testimony is both Relevant and Admissible under Federal Rule of Evidence 702**

Rather than pursuing the traditional route of seeking expert preclusion under *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993) and Rule 702, the Government inexplicably takes a short cut. In doing so, the Government's goal appears to seek preclusion of Defendant's experts solely to hamstring the presentation of his defense. To establish the admissibility of an experts' testimony, a party must show the testimony "is relevant to the task at hand, i.e., that it logically advances a material aspect of the proposing party's case.'" *Howard v. General Electric Capital Business Asset Funding Corporation*, 2006 WL 2460633, at *1 (D. Ariz. 2006) (citing *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1321 n. 17 (9th Cir. 1995) (Daubert II)). Further, the expert testimony must both rest "on a reliable foundation and is relevant to the task at hand." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). In short, expert testimony is inadmissible unless it will "assist the trier of fact to understand the evidence or to determine a fact in issue," and the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and the proposed testimony is sufficiently reliable. Fed. R. Ev. 702; *Daubert*, 509 U.S. at 590 (1993).

The Government's motion ignores Rule 702 and, instead, advances solely conclusory arguments based only on relevance. The Government's motion does not even attempt to refute any of the requisite elements: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;(b) the

testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Having failed to do so, the Government has waived these arguments.

### A. Dr. Inaba Presents a Question of Fact for the Jury to Resolve

As the Government's Motion concedes,

> Dr. Inaba concludes that absent the medical negligence and/or delays in this case, it is "more likely than not that Special Agent Bauer would have survived his injuries." In making this conclusion, the opposite is also true: with standard care and no delays, Special Agent Bauer may still have succumbed to his injuries.

Doc. 126 at 3:27-4:1.

However, this is specifically the type of disputed factual issue that a jury must decide. Simply because the Government may have a different view does not render Dr. Inaba's opinion a nullity, particularly when the Government has not disclosed an expert opinion to the contrary, nor does its differing view deprive a finder of fact of the ability to resolve the issue.

### B. Mr. Cole's Opinions are Both Clear and Relevant

Contrary to the Government's feigned assertion, Mr. Cole's opinion is far from vague. In fact, his opinions contain not only references to industry standards, but they apply those standards to the *facts* of this case. Specifically:

> [The Phoenix Fire Department's] processing time is well above the two minutes outlined as industry standard in NFPA 1710 | 4.1.2.3.3.1. Any delay in transmitting the alarm to necessary fire and EMS units delays the time in which the patient can be contacted, care rendered, and transport to higher levels of care. In cases involving serious injuries, particularly traumatic injuries, the harm to patients is increased by virtue of the delayed response. (Doc. 126-2 at 2:§ 2.11 ¶ 2)

> Daisy Mountain Fire & Medical R146, which provided treatment and transport, was dispatched with the first initial units at 11:13:29

and responded at 11:14:05. R146 arrived on scene at 11:26:39, 12 minutes, 34 seconds in response time. NFPA 1710 (2020 Ed.) 4.1.2.1 (8) stipulates the travel time for fire department units to a medical call involving ALS (Advanced Life Support) must be less than 480 seconds (8 minutes). Both Engine 56 and Rescue 146, as the primary care units, did not respond within the time mandated by industry standards. The considerable extra time for R146 to arrive on scene delayed in transporting the patient to a higher level of care. (*Id.* at 2:§ 2.13 ¶ ¶ 1-3).

An air ambulance would have shortened the transport time to the hospital, mitigated the extended response time for a ground ambulance. Dispatch logs from Phoenix fire do not show any consideration for an air medical transport. This lack of consideration on the part of responding units for their own standard operating procedures is a direct contributing factor in the extreme extended response to this incident. (*Id.* at 2:§ 2.41 ¶ 3).

Based on the summary of Agent Hopkins testimony, self transport would have been a viable option which would have gotten the victim to the hospital far quicker than waiting for Fire and EMS units to arrive and transport. Further, the summary shows Agent Hopkins and others had brought first aid equipment and were rendering basic aid to the victim, displaying knowledge of best practice for response to these incident types. With the availability of transport, and somewhat knowledgeable persons rendering aid, self transport would have been a viable, and considerable time saving option, in transport to a higher level of care. (*Id.* at 2:§ 2.42 ¶ 3).

"Evidence showing a violation of 'privately set guidelines' for industry standards is admissible and probative of negligence. . . ." *Kraft Reinsurnace Ireland, Ltd. v. Pallets Acquisitions, LLC,* 845 F. Supp. 2d 1342, 1353 (N.D. Ga. 2011). In industries as to which the standards are binding, a violation of the standards, standing alone, constitutes negligence as a matter of law. *Robertson v. Burlington N. R.R*., 32 F.3d 408, 411 (9th Cir. 1994).

Mr. Cole's testimony is also foundational and the logical precursor to Dr. Inaba's opinions. Mr. Cole's specialized knowledge and expertise, which is not

challenged by the Government, will assist the jury in its understanding of the series of events that led to the unnecessarily delayed transport of the Victim. That delay, according to Dr. Inaba, was an avoidable, intervening cause of the Victim's demise.

## IV. Conclusion

Yet again, the Government seeks to gut Defendant's constitutional right to mount a defense *after* he has proffered uncontroverted expert testimony that will assist the jury in understanding complex issues. Rather than challenging the experts' testimony through the appropriate avenue of Rule 702, the Government asks the Court to adopt its unilateral summary pronouncement that the evidence is not relevant.

What the Government misses is that factual determinations are in the sole and exclusive province of the jury. The Court should pay no mind to the Government's legally incorrect arguments and its feigned claims of procedural violations, particularly when its own statements and the absence of any prejudice fly in the face of its arguments. The Court should, therefore, enter an Order denying the Government's motion.

Respectfully submitted this 17th day of January 2025.

/s/ Jason D. Lamm
Jason D. Lamm

/s/ Jeffrey H. Jacobson
Jeffrey H. Jacobson
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2025, I electronically submitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and notice will be sent to all parties by operation of the Court's electronic filing system.

<u>/s/ Danielle Oesterle</u>